Your Honor, the first case this morning, 208-917, the Village of Deerfield v. Commonwealth Edison, on behalf of the Appalachian, Mr. Norm Finkel, on behalf of the Appalachian, Mr. Barry Rubinstein. Good morning, Counsel. Mr. Finkel. Good morning. May it please the Court. The circuit court in this case erred when it misconstrued plaintiff's action as a complaint challenging defendant's rates and then dismissed the complaint for lack of subject matter jurisdiction. In this case, plaintiff makes no claim for refund of any payment made to defendant and makes no claim for any rate abatement or any rate reparations. Rather, plaintiff simply seeks to recover for property damages and other losses by defendant's breach of contract and by violations of the Public Utilities Act. Doesn't your complaint really directly put in issue how Commonwealth Edison operates its electrical system? We don't believe so. I think to the extent that ComEd violated its contract and violated the Public Utilities Act by failing to provide the appropriate service, to that extent, the answer is yes. The issue in this case is whether or not the plaintiff can seek and obtain from the court damages resulting from that violation and the failure to provide that service. Counsel, is this one or the other proposition? I mean, you're aware of the DAC in your primary jurisdiction? Yes. Some of your counts, they sound in tort. I think that they would certainly be within the jurisdiction of the circuit court. But you're also alleging ComEd has failed to make such enlargements and extensions of its distribution facilities as are necessary to provide electrical service. Doesn't that go to the heart of whether or not the facilities are adequate? Isn't the commission in a much better position to make that determination than the circuit court can? The issue, the circuit court, it has the ability to determine whether or not my client and those living in the village have suffered damages as a result of the failure to provide adequate service. Courts do that all the time. Failure to provide adequate service, breach of contract, there's a contract that the ComEd has with the village. Courts do that all the time in order to determine whether or not there's been a violation. We are not looking. The issue here is whether or not there's a rape complaint, whether or not there's a discriminatory charge, an excessive charge. That's the dividing line here. And that is not what ComEd, the village of Deerfield, is seeking here. Granted, it doesn't directly, you're not seeking reparations for rapes unjustly imposed. I think that's clear. You're not. However, if the theories touch on the adequacy of facilities, the adequacies of supplies, it would appear at least that those are matters that traditionally fall within the jurisdiction of the commission. But let me ask you a very pointed question. What is the problem in your perception with the commission looking at this case first? What is the problem? The problem is that the legislature has specifically allowed a statutory remedy for the village of Deerfield and its residents. The statutory remedy is very clear, at least in my view, as to the recourse that the village has for violations of the Act. And so if the village was not entitled to that remedy, there would be no point in that provision of the Act. And so in terms of the problem that I have or the village has with respect to the ICC, it's not so much that the village has a problem with the ICC. It's a matter of where its remedy can be sought. And the remedy that it is seeking is within the courts because the law provides that that's where the remedy can be sought. If the matter were to go back to the commission, the village of Deerfield is unsatisfied with the result of the commission, can't you take an appeal? Yes. But that's the issue here is whether or not that is something that the law requires. The law does not require the village of Deerfield to go to the ICC. The village is allowed to seek remedies in the circuit court just like any other statutory remedy provided by the legislature, which has been provided here. But the statute, it does say an attribute cover for losses, damage, or injuries may be brought in the circuit court by any person or corporation. I think that's correct. That's correct. Are there any cases you have that say this is the exclusive remedy? If some of the theories touch on the operations of ICC matters, that the matter can never go back to the commission? We have cited a number of cases, one of which this Court is very well aware of, and that's the village of Roselle v. ComEd. In that case, the village brought an action against ComEd seeking an accounting. In that case, it was an accounting relating to unpaid electrical taxes. The claim was due from ComEd. In that case, this Court rejected the claim by ComEd that the claim concerned a rate or other charge of public utility that is alleged to be excessive or discriminatory. And the Court found that the essence of the village claim was not any overcharge but involves other allegations in terms of wrong that was done to the plaintiff in that case. So it found that the Court had jurisdiction to hear the case. Referring to your comment a few minutes ago, the Court also rejected the claim of primary jurisdiction, which was also made in the case, finding that the information that had been requested by the village did not involve any specialized knowledge that required interpretation by the ICC. Similarly, in this case, I think this is even a better case. This is not a rate case. There is another wrong that was committed here by ComEd in terms of violation of the act and violation of the agreement, the franchise agreement that it had with the village. It's causing real damages to the people and the residents of the village for which we are seeking a monetary recovery. And the ICC does not need any specialized knowledge for this type of case. We cited two Illinois Supreme Court cases that directly bear on the issue of whether or not this Court has jurisdiction. The Employers Mutual v. Skilling case and the People v. NL Industry case. Those are not 1920 cases. It's a 1994 and a 1992 case. And those cases specifically said that in order for jurisdiction to be divested from the Court, the statute specifically has to say so. That not only has not occurred in this case, but we have a statute that actually allows the courts to hear of this case. In those two cases, we had a situation involving the Workers' Compensation Act. And in the Employers Mutual case, you had language that specifically said all questions under the act shall be determined by the Commission, and that any disputed questions of law or fact shall be determined by the Commission. That is much harsher language than we have here. Here we have a statutory remedy. But yet in that case, the Court held that the act did not specifically divest the circuit courts of jurisdiction. Our case is much better than that case because 5201 specifically allows a civil action to proceed. Counsel, let me just ask you this. In the first count you've got your alleged comrade failed to take all reasonable and necessary steps to assure an adequate supply of electricity. Doesn't that go to the very heart of what it means to operate a utility? Then you've got the allegation he's failed to make such enlargements and extensions of his facility as are necessary to provide electrical service. Granted, if you take the perspective that it's only to look at damages, however, in making the analysis that you have specifically supported in your complaint, these become overarching issues that have to be determined. It would seem the Commission, not the court system, is the appropriate place to address whether comment is required to build or expand facilities. The court system is adequately able to determine if comment should build or expand facilities? The question isn't whether they should do that, not in this case. Those citations reflect the provisions of the Franchise Agreement and provisions of the Public Utility Act that simply state what is required. The Franchise Agreement provides what ComEd's obligations were to the village. The Public Utility Act provides what service is to be provided to the village. So the citations to those provisions are simply mimicking what it is that those provisions require. We are alleging that those obligations were violated, and we are seeking damages as a result of that. But who makes the determination of whether or not these facilities are in? It's going to have to be the Circuit Court then, I know you're arguing. That's correct. And I don't see any reason why the Circuit Court can't, because if that weren't the case, there would be no reason to have the statute that allows the Circuit Court to address these issues with respect to violations either of the Public Utility Act or the Franchise Agreement. Is the Circuit Court in a better position than the Commission to know whether ComEd should expand or build the facilities? The Circuit Court is a better forum to determine whether or not, and the extent of damages suffered by the village residents as a result of the failure to comply with the Act and with the Franchise Agreement. Let me ask you this, and perhaps this will be addressed to the Commission as well. Aren't there certain public policy or practical considerations here? I mean, if you're going to have Circuit Courts, arguably, at 102 pounds, determine the standard of care and facility issues, arguably you could have inconsistencies running rampant throughout the State. Isn't that what the Commission exists to do, to apply the law equally to its expertise? Isn't that a legitimate concern, 102 different standards, different decision-making bodies bearing on this issue? But every case is different. Every case, and as you can tell from the cases that we've cited, they are all different. We have the Sutherland case, the Gowdy case, the Kellerman case, the Consumers Guild of America case, all of which allow these cases to proceed, one of which involved light bulbs, one of which involved inadequate phone service. All the types of things that you're describing have been routinely upheld to be not only within the jurisdiction of the Circuit Court, but in those cases denied primary jurisdiction claims because the courts found that it didn't require the type of expertise that what you're suggesting of the ICC. If you're talking about certain facilities, construction of certain facilities specifically, which is not being alleged here, that would be a different story. But the Circuit Courts routinely throughout the State, not just here, but throughout the State, allow these cases to proceed because each case is different, and the damages claimed in those cases involve a whole myriad of different claims that the utility failed to comply with the ICC. The Circuit Court here obviously decided it did not have jurisdiction, right? Pardon? The Circuit Court decided it did not have jurisdiction, right? In this case, yes. So what is the standard of review on appeal here? What is your verdict? Do not. Do not. Let me ask you this again. What is the prejudice to the village of Deerfield if the matter would end up before the commission admission? What is the specific prejudice to the village of Deerfield? I don't think we said that there was necessarily any prejudice. This could take a very, very long time to go through that process and to come back to Circuit Court if necessary with whatever results that may or may occur over a long, long period of time. Justice Hudson, this is a damage case. And you know our arguments regarding Mormon and our view about that, so it ties into the Mormon issue. This is a damage case. There is no question that there were a number, you know, four figures, outages in the village of Deerfield over a period of time. There's no question about that. There's no question that residents have been damaged in terms of remediating mold and all kinds of things that have occurred here as a result of the failure to provide the adequate service. That is what the law allows them to sue for. And the quickest, I believe, and most efficient, and allowed for under the law in terms of the remedy by the village residents, is to take that conduct, which is, I won't say undisputed, but I don't think the village could possibly contend that there were no outages here. And as a result of those outages, regardless of the cause, we are entitled to damages as the village residents, regardless of what the cause is, whether it's the underground problem, the overhead problem, the damages here being sought as a result of the failure to comply with the Act and the agreement that ComEd had with the village. Those damages, I believe, are properly sought in the circuit court, and the legislature has provided so. The Illinois Constitution, we'll get into a little constitutional discussion here, which I find very interesting. As the court knows, it confers general jurisdiction on the circuit courts. We start out with that premise. And as we've discussed, and I think it's very important because the circuit court, I don't believe, addresses or addresses properly in the proceedings below, the legislature may only divest the circuit court of jurisdiction in favor of the administrative body if it explicitly does so. And far from doing that, the Illinois legislature has specifically allowed the circuit court jurisdiction to entertain this type of case, which has been brought under, among other things, Section 5-201. There's a good quote in the Sutherland v. Illinois Dahl case, which I think highlights some of our arguments. The appellate court noted in that case, and I'm quoting, we have made clear that suits for damages resulting from breach of contract or tortious conduct are properly brought in the first instance in the circuit court pursuant to Section 5-201. So we believe that this case belongs in the circuit court, not with the ICC. Nowhere in Section 9252, nowhere does the legislature provide that the circuit courts are divested of jurisdiction. And the cases, the Supreme Court cases that I cited, one was in the People v. Enel Industries case. That was the Pollution Control Board. In their case, the Illinois EPA had specifically provided that costs and damages provided under this section may be imposed by the Pollution Control Board in an action before the Pollution Control Board. Now, counsel, you didn't raise this argument below, though, did you? Yes, we did. You did? Yes, we did. So it's not waived on appeal? No. This is not the first time you're making this argument regarding 9252? The issue that you're referring to, Justice Zinoff, is the issue of whether or not the court needs to look at post-1964, in light of the 1964 constitutional amendment, whether we should look at that section differently than perhaps the courts looked before that. That issue, that's not the issue that I'm addressing in this argument. All right. Well, you'll have some time then in your rebuttal to address that if you wish then, too. Sure. Go ahead. From what you've said today, you believe that you most assuredly have the right to bring a claim in a certain court for a violation of the Act. Is that correct? Yes. Implicit in that statement is the fact that there may be other arguments that you've raised in your complaint that don't entitle you to jurisdiction in the trial court. Is that correct or incorrect? I believe that there were certain elements of the prayer for relief in certain counts that may not have been entitled to relief in the circuit court. But that wouldn't necessarily mean that the complaint doesn't state a cause of action. If that is true, then logistically, what is the best procedure for the courts and the commission to entertain complaints in order to deal with it most expeditiously? Well, we have withdrawn from appeal count two. So that leaves the contract count one. That's correct. I believe three relates to the Mormon doctrine claims that you're raising and the damage. That's the public utility, yes. What about count one? Count one is breach of contract against combat for violation of the franchise agreement. You've heard of it, the concept of matters of chancery where there is an advisory jury relative to either finance of fact or amounts of damages, which are then rendered to the trial court, and the trial judge then determines whether or not it's going to be bound or followed up. Like a special master of some sort? Well, I don't know that it's called special master anymore. I do know that there is a procedure. My point is that is not this a situation where maybe the commission might be the best trial of fact to determine what the underlying facts are, i.e., you didn't claim that the commission wasn't the best determiner of the facts. You claimed the court was the best determiner of the amount of damages. In order to determine the amount of damages, you first have to determine whether there's been a breach. You never commented on who you thought was the best arbiter of that determination. What is your position relative to that issue? The court. I believe the court can determine, just like any other case, whether there's been an act here and there's a contract. And I believe, like any other case, just because it involves a public utility, I see no reason why the court, just as the other case that we've cited on other issues, the court can't determine whether it was a violation of a franchise agreement or the Public Utility Act and then determine damages, just as any other case. I have no further questions. Thank you. You'll have additional time on rebuttal. Thank you. Mr. Levenstam. May it please the Court. There is, indeed, an underlying assumption in the argument that my opponent makes, and that is that we're guilty, that we're liable, and therefore what he's looking for is damages. We do not deny that there were outages. We do deny that the outages amounted to a violation of any contractual obligation. The contract. Are you a religious man, sir? Somewhat. Well, then you at least might buy the argument that some of these things were acts of God, whereas if you're an atheist, there is no God, and therefore there could be no acts of God. Yes. And therefore there would probably have to be some proximate cause arising out of the contract that could probably be deemed to be a breach. Yes. Yes. I believe the atheists. Is it part of your defense that you're a religious man, and you believe that there were acts of God that caused the outages? Well, plainly, yes, plainly there were. But the fact of the matter is that service interruptions are contemplated in the contract. Section 5.5 of the contract indicates there will be service interruptions, and so a service interruption is not a violation of the contract. Indeed, 5.57 specifically says there will be service interruptions from time to time that may last more than 12 hours. And when those things occur, then the citizens and customers who are subject to that will get credits on their monthly bill, and that's a part of the tariff that's part of the law that governs this case. Counsel, before we get in too far into the issues of whether or not there was a breach and whether or not there was damages, what about the threshold question that opposing counsel was emphasizing? Where should this matter be entertained in the first instance, the circuit court or the commission? Plainly, plainly in the commission. Apart from the statutory law, which I'll get to, and the case law, which I'll get to, the contract itself specifies that our duty to furnish this electricity in Section 5.2 to Deerfield is governed by the terms and conditions set down by the ICC. In 11.2, the contract says if this is an area in which, if the complaint addresses an area which is a matter of the exclusive jurisdiction of the ICC, the sole remedy of the village will be before the ICC. Provision after provision, 4.4 and 6.1 talk about new technology and additional facilities which they seek, and those specifically say that they are subject to the ICC's control. So the contract, for starters, is completely bound up with the notion that the ICC is regulating what is going on here. Is it too late to go to the ICC? No, I don't believe so. Certainly not for the most recent complaints. And practically, how would this case get there? Well, the ICC has a procedure for filing complaints, which is specified in 9, it's touched upon in 9252, which says if you have complaints, you bring them to the ICC. And the ICC and the Are you saying that Deerfield then has to now turn around and file a complaint with the ICC? That's what would happen, yes. And then the ICC So if the circuit court were to stay the proceedings there? Then there would be a referral to the I'm sorry, I'm not familiar with the I'm not terribly familiar either. There would be a referral to the ICC, which would By the circuit court? Yes. The court would retain jurisdiction, but it would infer the matter In a primary jurisdiction case, yes. But we believe that this is a case of exclusive jurisdiction. I see. Again, following Justice McConnell's question, and perhaps we'll have to ask the opposing counsel, there are no statutory time limits Well, 252 On whether or not the village of Deerfield still has a remedy to go to? There is a two-year limitation in 252, specifically. It says all complaints for the recovery of damages shall be filed with the commission within two years from the time the product, commodity, or service as to which the complaint was made was furnished. So where does that leave the village of Deerfield? Well, where it leaves the village of Deerfield is with the opportunity to go to the right governing body to address on a prospective basis, and for the past two years at least what should be done with its complaint about adequate or inadequate facilities. So again, to make it crystal clear, you're saying it's a matter, it's a court-ordered fine, and that's the critical question, if the matter should be referred back to the circuit court, the village of Deerfield will still be able to file an action before the commission in a timely manner, and you don't see any problem with that? Right. Whether they can go back as far as they want to go back now is not clear to me. I haven't researched it. But that's not determinative of a jurisdictional question. If they should have gone several years ago, they could have done that. Nothing stopped them from doing it. But the issue is there is certainly, to the extent what they want is to get this system to a better place, the first place they should have gone is the ICC, because the ICC, if you look at 58501 and 58503, is charged with the responsibility of on complaint setting a hearing and determining whether services are adequate. We don't want to gloss over that because otherwise it's illusory. The village of Deerfield should go to the proper place, you're saying. Yes. And let's assume that we exceed to the correctness of that article. Yes. If in fact there's some kind of time limitations that would impact, and all the citizens of Deerfield who suffer damage are without remedy, it has to be a concern. You can't say, well, sorry, it's too late. We had a remedy and now we didn't file it in a timely manner. Don't you think that's important to the citizens of Deerfield? Well, why wouldn't the same be true of any statute of limitations claim? Yes, that's what statutes of limitations do. They cut off claims after a period of time. The point is, well, first of all, the complaint does not adequately plead damages. Count 1 contains no prayer for damages relief. It is dismissed on the ground that it complains no prayer for damages relief. That's expressly in the opinion. The Sutherland case, which is all over the papers, which counsel cited here today, specifically says the law of Illinois, which is perfectly clear, if you have a complaint that's dismissed and you want to change it before you go up on appeal, you have to file a motion seeking leave to amend your complaint. They never did that. That constitutes an election to stand on the complaint as it's pleaded. And so insofar as the Count 1 breach of contracts claim is concerned, there is no complaint for damages. Insofar as the Count 3 tort claim is concerned, that is a Mormon dismissal. We also argue that. Okay, so why is it a Mormon dismissal? I mean, it sounds important. If somebody's basement was flooded, I mean, elected leave, somebody lost food. Mormon only applies in tort cases. It's economic. Yes. Okay, but if somebody's property is damaged, their food is lost, why is it economic loss? Because it's not a direct damage. It's like the Cannon case. If you create a condition as opposed to directly creating the damages, that's the difference. So if Commonwealth Edison had had a power surge and somebody's microwave had been fried, that's a direct damage. If, on the other hand, there's an outage and over the period of time, you know, there are steps that people can take. You go buy ice to ice down your food or you do various things. You can find a generator. There are a variety of things. In the Cannon case, the power went out, and in the darkness, a man slipped down the stairs going down to the basement and fell and became quadriplegic. And the court held, no, that is not a direct result of the outage that created a condition of darkness, but it did not directly cause. This violation of food would not be directly caused? No, it would not be directly caused. That's your opinion. Right, well, yes, that's something that happens over a long period of time. It's not sudden. It's not dangerous. Okay, so it doesn't fall within that exception. And what's more, and I'm looking at the flood case now. Unlike the flood case where the suit was against the city of Chicago for this flood, which was a tortious incident, and the court specifically said that, that was not a case of disappointed commercial expectations. This is a case of disappointed commercial expectations. And so it falls within the Mormon bar. What is, not to get sidetracked here, but Counsel emphasized the statute. His allegation was that the statute that he cited clearly specifies that this type of action mandates it goes into the circuit court. What is your interpretation of the impact of that statute here, and how do you take the case out of the purview of that statute? That statute has existed, has coexisted with 252 since basically 1913, 1920. Read at its fullest breadth, that statute would completely undermine the regulatory scheme, because it says any violation of the Act, and the Act says you have to provide adequate service. So if your theory is what his theory is, at any time there's an allegation you've provided inadequate service, you fall within that Act, you go to circuit court, the ICC can, you know, they can look for another job. Justice Miller said in his concurrence in the switching station case, okay, which is a case in which AT&T negligently allowed a fire to burn out its switching station, and the western suburbs were without phone service for a full month, and no one was allowed to recover damages. He said specifically that this statute has to be read in the context of the Act, and limited to provisions, limited to claims that are the normal bread and butter work of the circuit courts. You know, a case where the Con Ed truck runs somebody over on the way to a job, a case where, you know, somebody does something negligent, but not where you're talking about the essence of the ICC, is this service adequate? You know, Justice Thomas writing for this court in the Warrenville case said specifically, it's difficult to imagine any situation that is more, in which it is more necessary to have statewide regulation than the transmission of electricity. And so, you know, you talk about 102 counties regulating electricity separately through their circuit courts, and by the way, you know, there's a jury demand in this case too, so now what you're going to have is not just a circuit court, but a jury deciding what constitutes adequate service or not. The Warrenville case was a home rule case, and the law, and they said specifically, we cannot have municipalities addressing under the home rule theory the transmission of electricity. That has to be dealt with at the statewide level by the ICC. Well, what specific test are you then articulating? He obviously refers to a statute that under some circumstances, concededly allows a citizen to file an action in the circuit court for damage. Yes. So what is it here that troughs the statute or takes it out of the specific language of the statute specifically? The fact that this is a direct challenge to the rates and services of a regulated utility. How is it a challenge to the rates? What does this have to do with rates? Well, it has everything to do with rates because rates and services are intertwined. Services, I see. I don't see the connection with the rates. Well, because whatever you decide needs to be done in Deerfield, okay, if you're a court, that is going to have to be reflected in the rates schedule for the utilities, and the circuit court judge recognized this very correctly. What this case essentially is, is an attack on the rate structure, saying the rates are not high enough for you to be able to afford to give us in Deerfield the kind of electrical service we would really like. That's what they're saying, essentially. I see your argument. I would couch it. It doesn't directly implicate rate-making authority. I think in the past it doesn't directly, but it implicates it. Right. Well, the Citizens Utility Board versus the ICC, the Supreme Court said specifically that you must allow the utilities to recover their costs of services. So if there are, in that case, it was a matter of cleaning up some pollution that they had earlier laid down, and they said to the ICC, yes, you have to give them 100% of their cost recovery in their rates. Now, the fact of the matter is that the General Assembly has determined for the state of Illinois that it will be a least-cost electricity system. And so the ICC has to run the statewide electricity utilities on a least-cost basis. And that means, you know, would it be possible to bury all the cables in Deerfield? It might be. Would it be possible to build backup circuits throughout in Deerfield? It might be. But the fact of the matter is that it's the ICC carrying out the General Assembly's least-cost directive that has to make those determinations because the other thing the ICC has to do is ensure that the utilities make a sufficient return on their investment that they can attract capital in the marketplace. I mean, it's a big, complicated web. But that's what the General Assembly says in the statutes it has to take into account. So it has to do that as well. And at the same time, it has to make sure that the people who are living in the inner city or in isolated rural areas who may not have as much money as other communities, they're able to afford electricity at the same rates. So when you start talking about a particular individual community saying our service isn't good enough, the number and complexity of the issues that that implicates is something that the ICC, with its regulatory expertise, and I don't mean to offend the judges of this state, who are certainly capable of handling complex issues, but you have both the technical, scientific expertise of the ICC and the uniformity of regulation of the ICC. And it is familiar with all of the delicate issues that are being balanced when you're talking about services and rates. Counsel, are you aware that there's a recent case that found that a utility was negligent because they didn't come and fix a wire that was on the ground and someone was electrocuted? I believe it was either a fireman or a police officer. I believe it was a fireman. According to what you've just said over the last 8 to 10 minutes, that case was wrongly decided because that should have been a rate issue and not a negligence issue. Well, standard repairs are different from quality of service, and standard repairs are built into the rate system. No, your argument was basically that there is no such thing as negligence because everything is intertwined and dependent on whether or not there are sufficient rates. If the rates are high enough, there will never be a problem. At least that's what I thought your argument was. I'm not talking about negligence here. I'm talking about adequacy of service. Clearly there are negligent acts that are... Are you telling me that the complaint doesn't allege negligence, it just merely alleges inadequacy of service? Well, the negligence alleged supposedly is the fact that we allowed outages or that we did not get the outages fixed more quickly. There's no separate negligence like somebody strung a line wrong or somebody put a fuse in improperly or somebody ran over somebody with a truck. This is a case about whether Gearfield is being properly served by Commonwealth Edison and delivered their electricity transmission system. I understand that's your argument. Thank you very much. Thank you, Mr. Counsel. Mr. Finkel? Counsel, can you address first the issue of the manner worded in your amendment in order to ultimately agree with the position of opposing counsel? What is that going to leave the village with? Are there any time restrictions or statute of limitations that would bear on the issue? Yes. Good question. And the answer is yes, and it goes back to your question earlier about the prejudice to the village. You asked questions of counsel, and he made reference to it, but I think made light of it. There is a two-year restriction, and that is within 5-9-252 that requires two years to bring an action filed with the commission. That would seriously prejudice the village of Deerfield and its residents because those claims would be gone. Those claims would be too late and our damage claims would be lost. So if at this point, after that limitation period has expired, and counsel basically suggested, well, that's our problem, well, it could be our problem, of course, if that's what the court decides. We legitimately and properly brought an action within the circuit court because the law allows us to do that. And if now the court finds an issue of primary jurisdiction or whatever and sends it back to the ICC after that two-year period, all those claims and the complaints are gone, period, end of story. Let me ask you sort of a technical question. How do we, on what basis do we arrive at a consideration of that issue? Sort of outside the record, is it not? Is this something that really we can even delve into? We asked a question, and I asked a question, you know, as a matter perhaps of public policy concerns, but I think if it hasn't been briefed, has that issue been addressed? What would happen if the matter got remanded back to the commission where that would specifically leave the village of Deerfield? How do we arrive at a decision on that issue when it's never been presented to the court? Clearly, the 9252 has been addressed in the context of whether this is a rape case and so forth. The issue of primary jurisdiction itself has been discussed in the context of this case. In light of those issues, you can look at that section and you question the issue of primary jurisdiction, and that's how you get to it, because if the court is inclined to consider the primary jurisdiction issue, then it needs to look at, among other things, the prejudice to the village by virtue of doing that. What's the difference between concurrent jurisdiction and primary jurisdiction if there's any difference at all? Not much, Justice. The cases have discussed the issue of exhaustion of administrative remedies, primary jurisdiction, concurrent jurisdiction. Really, concurrent jurisdiction is when two bodies have jurisdictions simultaneously, and then the court decides, because there's some expertise in one of those bodies, we should stay the proceedings in this case and allow the other body to consider it. Is it reasonable to say that primary jurisdiction is essentially concurrent jurisdiction in which form nonconvenience or venue is determinative? A form nonconvenience? I don't know. I don't see how the form nonconvenience or venue issue plays into that in the context of this case. Well, I believe primary jurisdiction suggests or infers that one of two concurrent bodies or concurrent jurisdictional bodies have jurisdiction, but one of the two has more expertise or has greater facilities or is more experienced in the area, and therefore the other jurisdiction should defer on any number of factors or bases to allow the other forum to preside over the issues, which I think if you study forum nonconvenience, that's essentially what forum nonconvenience is in the abstract, is that forum is not convenient. This forum is, and for what purpose or what reason? So what I'm suggesting to you is that I haven't heard too much or seen too much in the briefs of the argument about concurrent jurisdiction. I've heard little about primary. I've heard a lot about exclusive. Both counsels seem to be arguing the opposite relative to exclusive. I haven't heard too much about primary, and it would seem that primary relates to concurrent jurisdiction where logistically one is the better forum than the other, and you did mention that the trial court was the better forum for purposes of determining damages, but you really didn't address it until I asked the question about which forum was the one that was the best arbiter of facts. Well, I believe, and I believe the briefs indicate that it would be the circuit court, which is why we cited the Sutherland, the Gowdy, the Kellerman, the Consumers, Gill case, the Village of Roselle case, all of which addressed that issue of primary jurisdiction. Those courts all concluded that whether it's inadequate phone service in the Sutherland case, fraud and deceptive practices, negligent misrepresentation, all those courts considered in the first instance whether the circuit court had jurisdiction or whether it was divested of jurisdiction and concluded that they did have jurisdiction. Then they went to the next issue, all those cases. Then they went to the next issue. Okay, well, that's fine. We have jurisdiction. Should we exercise it? Do we have primary jurisdiction, or should we send it to the ICC or whatever utility company was at issue in that case? And each of those cases decided no, whether it was for inadequate phone service and so forth. All those cases decided no, we can and should take those cases and hear them just like any other case. There's no reason not to. And those cases did address the issue of primary jurisdiction. And for those same reasons, all those cases, including the case of this court in 2006, this case is no different. Counsel argues that 5201 is not within the regulatory scheme. This isn't an issue of regulatory scheme, as it is whether or not the jurisdiction, the legislature, has provided that this court has jurisdiction. If the legislature wanted the ICC to hear all violations of the Act because the suggestion is they're all tied up together and so any claim at all is basically a rate case, the courts have rejected that. Counsel, what about the argument he makes that the franchise agreement itself, the contract, contemplates certain issues that your complaint touches on and goes to the ICC? What's your response to that? I'm sorry. As to which? That he referenced an agreement, the contract. Perhaps he was talking about the franchise agreement when he said contract referenced or contemplated that questions like this would go to the commission. What's your response to that? I don't agree with that. I don't agree with that. The notion that any claim, including the claim here, which is seeks property damages, can ultimately be reduced, which is what ComEd is trying to do, as I would do if I were them, but I don't think it's correct, can ultimately be reduced to a rate challenge would eviscerate the entire meaning of 5201. Defendants could always claim, always, they would always claim that in order for it to comply with its contractual and statutory duties, it would necessarily have to spend more money, increase rates, and so they would conclude that the claim fell within the profits of the ICC. That could apply to any case. You can make that argument all the time. Taken to the logical conclusion with that argument, a wrongful death case, which I don't think ComEd would argue is not in the province of the circuit court, would be considered a rate challenge and not subject to the court's jurisdiction. Why would that scenario be any different than the cases that we've been talking about in this case? So there has to be a difference between the two. Do you have other questions? Thank you very much, counsel. Thank you, Justice. At this time, the court will take the matter under advisement and render a decision in due course. The court stands adjourned.